### West v. West, et al.

(Decided June 8, 1923.)

### Appeal from Graves Circuit Court.

1. Adverse Possession—Evidence Held to Sustain Finding Son had Not Held Adversely to Mother and Father.—In an action for partition, where defendant claimed the entire tract under an oral gift from his parents to himself and his brother, who was plaintiff's ancestor, and a deed from the brother of the latter's interest, evidence as to the possession of defendant held to sustain the chancellor's finding that such possession during the lifetime of his father and mother was not adverse to them, so as to give him title, especially in view of prior pleadings by him during his father's lifetime, in which he claimed as grantee of his father's estate by curtesy, which was inconsistent with a claim of gift from his mother.

2. Partition—Remaindermen Cannot Claim Reimbursement for Improvements Made Before Death of Life Tenant.—One of two remaindermen, who was in possession of the property as grantee of

the life tenant, cannot claim reimbursement for improvements placed on the land by him before the death of the life tenant.

HESTER & HESTER for appellant.

W. H. HESTER, T. J. MURPHY and W. S. FOY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

James West and Malinda West were husband and wife. They had two sons, Lewis and Thomas. Some time prior to 1896 James deeded to his wife, Malinda, a tract of fifty acres of land in Graves county. It lay just across the road from his home place, which contained about 200 acres. According to the contention of appellant, Lewis West, his mother and father gave to the sons, Thomas and Lewis, about the year 1897, the 50-acre tract of land deeded by James to Malinda. Thomas married about the time and moved on to the 50-acre tract. He built a small house and cleared some ground and raised a crop. His wife became dissatisfied and Thomas moved to Benton, where her folks lived. Thomas sold his share in the 50 acres to his brother Lewis for $500.00 and put Lewis in possession. Although their mother had given the tract of land to them she had not made them a deed for it. It is the contention of Lewis that the land was given to him and his brother and that they were put in possession of it and that later he bought of his brother his one-half interest and paid him $500.00 therefor. This, according to Lewis, was all done with the knowledge and consent of his parents. At any rate Thomas made to Lewis a deed for his interest in the 50-acre tract and surrendered it to the latter. Lewis enclosed the entire boundary by fence and lived on it for more than fifteen years next before the institution of this action by which the heirs of Thomas, deceased, are seeking to have a division of the said 50 acres and a sale of that part allotted to the heirs of Thomas and a division of the proceeds. Lewis denies the right of the heirs of Thomas to any part of the land.

On the other hand, the heirs of Thomas contend that the land was never given by the mother to Lewis and Thomas, but say they were only allowed to use it. The mother lived until 1914 and the father until about the year 1918 or 1919. The mother never made a deed to either of the sons, and, according to the evidence, she said on different occasions up to the time of her death that

she was the owner of the tract now in controversy. On one occasion she claimed the land in the presence of her son Lewis and he did not deny the claim. If, as contended by the heirs of Thomas, the mother was not divested of the title until her death, it passed in equal parts to Lewis and Thomas, subject to the right of curtesy in James, the husband of Malinda, and father of Lewis and Thomas. If this be the correct solution of the tangle, then the heirs. of Thomas are entitled to one-half of the 50-acre tract of land, unless the deed from Thomas to Lewis passed Thomas' expectant interest or worked an estoppel against Thomas to claim any part of the 50-acre tract. If Malinda and James gave the land to their two children jointly and put them in possession in 1897 and thereafter Thomas sold his part and by deed conveyed it to Lewis, the latter became the owner of the entire tract and after the lapse of fifteen years his claim ripened into title, good against all the world.

The evidence upon the adverse holding asserted by Lewis is very conflicting. There is, however, one fact which no doubt influenced the chancellor in the determination of this case in favor of the heirs of Thomas. In the life of Thomas he brought an action against Lewis and their father for a division of the 50-acre tract, asserting that he, Thomas, was the owner of one-half thereof. This suit was commenced after the mother died. In answer to this action Lewis and his father pleaded that Thomas had no interest in the land, at least no present interest, and that Lewis had purchased of his father, James, a curtesy which the old gentleman held in and to the tract and that by reason thereof Lewis was entitled to the possession of the land so long as their father lived. In that case the court held that the suit was prematurely brought and dismissed it. After the death of the father and after the death of Thomas, his heirs brought this suit for a division of the land, to which Lewis pleaded in substance that the heirs had no right, title or interest in the tract because he had purchased the curtesy of his father, James, and had bought out Thomas some years before and then had of record a general warranty deed for Thomas' interest in the lands. Later Lewis amended his answer and set up other defenses, but he did not expressly withdraw the averment that the land belonged to his mother up to the time of her death and that his father took curtesy therein and held same until his death. That

pleading is wholly inconsistent with an adverse holding on his part, and with absolute ownership of the land by Lewis. If his mother were the owner of the land then Lewis was not the owner and his father took curtesy. Neither of the parents had been dead long at the time of the commencement of this action, and Lewis did not have time in which to ripen his title by adverse possession. Both these answers by Lewis were verified by him and it is hard to reconcile the said answers with his ownership of the said lands although he attempts to reconcile the averments of his answer by saying that he merely pleaded the purchase of the curtesy of his father to avoid a lawsuit with his brother. A better defense, if true, would have been a plea of adverse possession. Upon the whole case the chancellor concluded that the parents, Malinda and James, did not give the 50-acre tract to their sons in 1897, but that Malinda continued to be the fee simple owner thereof and at her death her husband took curtesy which he held until his death in 1918. This suit was brought shortly thereafter and the court decreed the heirs of Thomas the owners of a one-half undivided interest in the said lands; that the said lands be sold and the proceeds divided between Lewis and the heirs of Thomas. As all the improvements were placed on the lands by Lewis long before the death of James, the life tenant, Lewis cannot claim reimbursement.

We think the finding of the chancellor is fully supported by the evidence as well as by the law.

Judgment affirmed.